EVALENA SPRADLING *v.* SHIRLEY SPRADLING

(No. 8440)

Submitted February 2, 1937. Decided February 23, 1937.

*C. E. Copen*, for appellant.
*L. S. Trotter*, for appellee.

RILEY, JUDGE:

This is a suit in equity, brought by the appellee, Evalena Spradling against the appellant, Shirley Spradling, in the circuit court of Putnam County for the purpose primarily of having declared null and void a certain deed dated February 22, 1922, of the said appellee to her husband, S. L. Spradling, during his lifetime. From a final decree providing for the annulment of said deed, the appellant appeals.

On September 25, 1910, the appellee and the said S. L. Spradling were married and lived as husband and wife in a home jointly in the town of Poca, West Virginia, from the time of their marriage until his death on June 1, 1933. This home was situated on a lot which the appellee had inherited before her marriage from her father.

At the time of his marriage, the decedent owned a lot immediately adjoining Mrs. Spradling's residence property, upon which was situated a two-story store building. Adjoining this lot, in the rear, there was another small lot owned by Mrs. Spradling which she also had inherited from her father upon which an old garage was situated. In 1913 and 1914, the decedent built the dwelling house in which he and Mrs. Spradling lived until his death, and in which Mrs. Spradling continued to reside.

This dwelling cost about $1,000.00, toward which Mrs. Spradling contributed $525.00. By deed made on February 22, 1922, Mrs. Spradling attempted to convey to her husband directly said rear lot (valued at $25.00 to $100.00). The decedent did not join in this deed. The deed contains no recital as to Mrs. Spradling's marital status; it recites a consideration of $10.00 and other valuable considerations; and was recorded in the clerk's office of Putnam County.

The old garage on the lot was remodeled into a small cottage in 1929. This cottage was rented by the decedent, who collected the rents until his death. Thereafter, the rents were collected by the appellant, Shirley Spradling, the decedent's only son (by a former marriage) and heir at law. The testimony varied as to the cost of this remodeling. However, Mrs. Spradling contributed $350.00 toward the expense.

During the whole course of their marriage, Mrs. Spradling and her husband lived together without any separation; no divorce had intervened to sever their marriage relationship; no children were born of this marriage. This was the virtual situation which existed between this husband and wife at the time the deed was executed, a relationship which continued until June 1, 1933, when Mr. Spradling died intestate, leaving the appellant as his only heir at law. Mrs. Spradling waived her right to qualify as administratrix of the estate and the appellant was appointed with Mrs. Spradling as surety on his bond.

After Mr. Spradling's death, an appraisement of his estate was made. In this appraisement, the two-story store building property was appraised at $550.00 and the lot in question was appraised at $400.00. The appraisement contains items of tangible personal property, listed at $297.00, and intangible personal property listed at $156.29. The appellant was present at the appraisement and directed it. Mrs. Spradling was not present, but, according to the appellant, she knew what was going on.

After Mr. Spradling's death and before this suit was brought, differences arose between Mrs. Spradling and

her stepson. In an effort to patch up these differences, a contract was entered into between the parties on January 9, 1934, which contract deals with the disposition of the personal property belonging to the decedent's estate, and provides further that the appellant shall collect "the rents, issues and profits of all real estate left by Sam Spradling at his death, and shall continue to pay the one-third portion thereof to *Evelin* Spradling so long as she shall live as is her right under the law of dower." Purporting to act under this contract, the appellant continued to collect the rents derived from the dwelling house on the small lot and paid one-third thereof to Mrs. Spradling. In the fall of 1934, Mrs. Spradling caused a survey to be made of the line between the lot in question and the property upon which her dwelling house was situated. The record does not disclose when the parties learned that the deed in question was void. On one occasion, the time of which does not appear, the decedent told her that the deed was void and asked her to make a deed for the lot to the appellant.

This suit was brought on December 28, 1934. The pleadings consist of a bill of complaint; an answer containing a prayer for specific performance of the contract of January 9, 1934; and demurrers to the bill of complaint and the answer, which demurrers were overruled by the court.

On this appeal, the defendant claims that the circuit court erred in three particulars: First, in holding that the deed from Evalena Spradling to S. L. Spradling is void; second, in holding that the appellee is not estopped from denying validity of the deed; and third, in holding that the appellee is not liable for the improvements made upon the lot in question by her husband.

The appellant's first ground of error is not well taken in the view of the law which governed conveyances between wife and husband at the time the deed in question was made. At the time the deed was made the parties were married and living together. Notwithstanding this, the husband did not join in the deed. Under the statute then in effect (Section 3, Chapter 66, of the Barnes' Code,

1923), a married woman could not convey real estate unless her husband joined in the deed. Moreover, a deed of a married woman to her husband, he not joining in the deed, was void and vested in the husband no rights or interest, either legal or equitable. *Smith* v. *Vineyard,* 58 W. Va. 98, 51 S. E. 871; *Mullins* v. *Shrewsbury,* 60 W. Va. 694, 55 S. E. 736. It follows that under the law of this state, as it existed when the deed was executed, said deed was void in every sense of the word. By its execution and delivery, Mrs. Spradling's rights in the lot in question were not altered or diminished in the least. Her title remained intact just as though the deed had not been written.

The appellant for his second ground of error says that Mrs. Spradling was estopped to deny the validity of the deed. Estopped by what, we ask? Certainly not by the deed itself which, under the statute and common law, based upon the prevailing public policy, was a mere nullity. For us to say that a party, making a void deed could be estopped by the delivery of the deed would, in fact, destroy the entire effect of the law. Such a position does not reside in sound logic. It finds no support in the decisions of this court, and it is opposed by the weight of authority in the United States. *Central Land Company* v. *Laidley,* 32 W. Va. 134, 9 S. E. 61, 3 L. R. A. 826, 25 Am. St. Rep. 797; 10 Ruling Case Law, p. 739, Section 56, note 9; *Leftwich* v. *Neal,* 7 W. Va. 569, 577.

The doctrine of estoppel is arbitrary in its very nature. It is invoked only in the interests of justice. Even then, it contravenes the technical, legal rights of the party estopped. For this reason, courts have been slow and careful in their application of the doctrine of estoppel. *Pocahontas Light & Water Company* v. *Browning,* 53 W. Va. 436, 442, 44 S. E. 267; *Mullins* v. *Shrewsbury, supra.*

Care should be used by us before we invoke the doctrine of estoppel, to the extent of preventing Mrs. Spradling from asserting her rights as to the lot in question.

Under the record in this case, we do not think that Mrs. Spradling was estopped by her conduct, for prior

to the enactment into law of the Code of 1931, a married woman could not be estopped from asserting her title to her real estate by conduct amounting to anything less than actual fraud. *Mullins* v. *Shrewsbury, supra; Waldron* v. *Harvey,* 54 W. Va. 608, 46 S. E. 603, 102 Am. St. Rep. 959; *Williamson et al.* v. *Jones et al.,* 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891; *McNeeley* v. *South Penn Oil Company,* 52 W. Va. 616, 643, 44 S. E. 508, 62 L. R. A. 562; *Yock* v. *Mann,* 57 W. Va. 187, 49 S. E. 1019. In this case, the appellant's answer does not assert estoppel as a defense. Its allegations are directed largely as to the contract of January 9, 1934. The necessary elements of equitable estoppel are not shown by the proof. Estoppel fundamentally rests upon deceit or fraud. It is, in its very essence, predicated upon moral turpitude and intentional wrong. There must, in the final analysis, be an attempt to mislead in the mind of the person to be estopped. *Mullins* v. *Shrewsbury, supra; Western Mining, etc., Co.* v. *Peytona Cannel Coal Company,* 8 W. Va. 406; *Davis* v. *Alford,* 113 W. Va. 30, 166 S. E. 701. Mere ignorance of the law governing the attempted conveyance will not of itself give rights to an estoppel. *Mullins* v. *Shrewsbury, supra.*

In considering whether the doctrine of estoppel should be applied in this case, we have not been unmindful of the situation of this husband and wife during the entire course of their married life. They lived in a common dwelling house which was erected by the husband with the assistance of the wife's funds. Mrs. Spradling lived on this home property during her entire life. The property was hers. She had inherited it from her father. The husband owned a store property directly to the east of the dwelling property. The husband, aided partly by Mrs. Spradling's funds, had remodeled into a dwelling house an old garage, which was located on the lot in question. He collected the rents from the premises on the lot. She, in turn, took in boarders. We are impressed with the idea that Mrs. Spradling and her husband, in making the improvements on the lot and in the maintenance of their home, were engaged in the common enterprise of mutual-

ly maintaining each other as man and wife. We do not think under all these circumstances that there is any room for estoppel. We cannot say that the circuit court erred when refusing to invoke the doctrine of estoppel. Any other position, under the record in this case, would contravene the sound public policy which makes courts, on every occasion where possible, try to uphold, not tear down, the marriage relationship.

The case of *Hanley* v. *Richards*, 116 W. Va. 127, 178 S. E. 805, cited in appellant's brief, involved an oil and gas lease. At the time of its execution, Section 3, Chapter 66, of the Code of 1923 was in effect, which provided in part that a married woman may convey her own real property, etc. "in the same manner and with the like effect as if she were unmarried." Moreover, in that case all of the detriment suffered by the lessee, that is, the payment to Mrs. Richards, the lessor, of the delay rentals, occurred after the enactment of Sections 3 and 7, Article 3, Chapter 48, of the West Virginia Code, 1931, whereby married women were relieved from all restraints as to their right to convey their real estate. Here, the improvements on the lot were made before the enactment of the new statute.

The appellant, in his answer and his briefs, relies on the contract of January 9, 1934, between Mrs. Spradling and the appellant. In fact, specific performance of this contract is prayed for in the answer. In doing so, appellant takes the position, untenable, we think, that the contract is a contract for the reconveyance of the property in question. Taking the most liberal view possible, we are unable to believe that such is the legal purport of the contract. In its preamble as well as in its body, certainly its terms are directed toward the personal property belonging to the decedent's estate. It is true the contract provides for the collection of "rents, issues and profits of all of the real estate left by Sam Spradling at his death", and provides for the payment of one-third thereof to Mrs. Spradling and a retention of the two-thirds by the appellant. However, we cannot say that this contract referred to the property in question because, as a matter

of fact and law, Mrs. Spradling's deed being void *ab initio*, the property never was a part of the decedent's estate. The contract was a bilateral contract, yet the answer of the appellant does not contain the necessary allegations of performance on his part sufficient to predicate a prayer for specific performance. Moreover, its terms are too indefinite and uncertain to sustain a prayer for specific performance. Specific performance of a contract as to real estate will be decreed only where the contract itself is definite and certain in its terms. *Mathews* v. *Jarrett*, 20 W. Va. 415; *McCully* v. *McLean*, 48 W. Va. 625, 37 S. E. 559; *Ensminger* v. *Peterson*, 53 W. Va. 324, 44 S. E. 218; *Crawford* v. *Workman*, 64 W. Va. 10, 61 S. E. 319; *Guinn* v. *Warbutton*, 64 W. Va. 76, 60 S. E. 1100; *Reger, trustee*, v. *McAllister*, 70 W. Va. 52, 73 S. E. 48; *Boone* v. *Hess Dustless Min. Mach. Co.*, 76 W. Va. 716, 86 S. E. 752; *Wegmann* v. *Clark*, 94 W. Va. 364, 118 S. E. 517. The weight of authority in the United States sustains this position. *Schmidt* v. *Barr et al.*, 333 Ill. 494, 165 N. E. 131, 65 A. L. R., page 1 (note thereto pages 102 to 110).

As to whether or not Mrs. Spradling was estopped by her conduct after the death of her husband, we think it sufficient to say that the record does not disclose the existence of the necessary elements of equitable estoppel. There can be no estoppel unless the following elements are shown to exist:

"First. There must be conduct, acts, language or silence amounting to a representation or a concealment of material facts. Second. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. Third. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him. Fourth. The conduct must be done with the expectation that it will be acted upon by the other party, or under such circumstances that it is both natural

and probable that it will be so acted upon. There are several familiar species in which it is simply impossible to ascribe any intention or even expectation to the party estopped that his conduct will be acted upon by the one who afterwards claims the benefit of the estoppel. Fifth. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. Sixth. He must in fact act upon it in such a manner as to change his position for the worse. In other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct, and to assert rights inconsistent with it."

*Norfolk & W. R. Co.* v. *Perdue,* 40 W. Va. 442, 454, 21 S. E. 755, 759.

The appellant suffered no detriment and not in the least did he alter his position. All the improvements on the lot in question were made by Mrs. Spradling's deceased husband during his lifetime, aided by her contributions, before the enactment of the West Virginia Code, 1931, Chapter 48, Article 3, Sections 3 and 7, except some slight improvements were made to the dwelling house in which Mr. and Mrs. Spradling lived some time during the year 1931. The fact that the appellant collected the rents from the property in controversy and paid one-third thereof to Mrs. Spradling did not constitute a detriment suffered by him. On the contrary, because Mrs. Spradling's deed was invalid *ab initio,* she was entitled to all of the rents and the retention by him of two-thirds actually was a benefit and not a detriment to him.

As a third ground of error, appellant claims that the circuit court erred in holding that Mrs. Spradling is not liable for the improvements made upon the lot in question. This ground of error and the appellant's prayer for affirmative relief are directed to the improvements made upon the lot embraced in the deed, and not to the improvements made upon the dwelling house. All the improvements made upon the lot, that is, the remodeling of the old garage into a dwelling house, were in 1929.

This was before Mrs. Spradling's disability as a married woman to contract with her husband were removed by the enactment of the Code of 1931. At that time, no statute removed her common law disability as to contracts with her husband. Under the common law, she could not make an express contract with him. *Bolyard* v. *Bolyard*, 79 W. Va. 554, 556, 91 S. E. 529, L. R. A. 1917D, 440; *Bennett* v. *Bennett*, 37 W. Va. 396, 16 S. E. 638, 38 Am. St. Rep 47; *Carey & Company* v. *Burruss et al.*, 20 W. Va. 571, 43 Am. Rep. 790; *Stockton* v. *Farley*, 10 W. Va. 171, 27 Am. Rep 566. This common law rule applied equally to the enforcement of a contract by a wife against her husband. *Roseberry* v. *Roseberry*, 27 W. Va. 759. If, as a matter of public policy, Mrs. Spradling and her husband were disabled from entering into an express contract for the improvements, certainly an implied contract would be equally invalid. The very relationship existing between the parties would preclude the implication of a contract arising between them. On the contrary, where a husband improves his wife's property, the presumption is that he did so as a gift or benefit to her, a presumption which, if it could be rebutted, under the prevailing public policy of the common law, was not, in fact, rebutted in this case. *Eaton* v. *Davis*, 165 Va. 313, 182 S. E. 229; 13 R. C. L. 410; *Kearney* v. *Vann et al.*, 154 N. C. 311, 70 S. E. 747, Ann. Cas. 1912A, 1189; *Anderson* v. *Anderson et al.*, 177 N. C. 401, 99 S. E. 106; *Selover* v. *Selover*, 62 N. J. Eq. 761, 48 A. 522, 90 Am. St. Rep. 478; *Burleigh* v. *Coffin*, 22 N. H. 118, 53 Am. Dec. 236; *Knott et al.* v. *Carpenter et al.*, 40 Tenn. (3 Head) 542, 75 Am. Dec. 779; *Bryan* v. *Councilman et al.*, 106 Md. 380, 67 A. 279, 14 Ann. Cas. 1175 and note. If a mutual mistake existed between the parties at the time the improvements were made, such mistake is one of law and not of fact. The decedent had actual notice of all the pertinent facts and those facts put him upon constructive notice that Mrs. Spradling's deed was invalid. If he did not know, he was bound to know that the improvements went upon his wife's property. Having constructive notice of the title to the property, he could not during his

lifetime claim compensation for the value of the improvements. *Williamson et al.* v. *Jones et al., supra; Yock* v. *Mann, supra; Dawson* v. *Grow,* 29 W. Va. 333, 1 S. E. 564; *Haymond* v. *Camden,* 48 W. Va. 463, 37 S. E. 642. See, also, *Warwick* v. *Harvey,* 158 Md. 457, 148 A. 592, 68 A. L. R., p. 284, Note 2.

Apparently, as an afterthought, counsel for the appellant in his reply brief for the first time says that Mrs. Spradling was precluded to assert her title to the property because of laches. Laches is a purely equitable doctrine. It is invoked only where necessary to do equity between the parties. The fact that these parties lived together as man and wife and engaged in the common enterprise of mutually maintaining each other of itself created a situation in which Mrs. Spradling would not be prompted to resort to court during the continuance of this relationship. As a matter of fact, the appellee did not delay unduly long after her husband's death before bringing this suit. He died June 1, 1933. The suit was brought December 28, 1934.

We think the trial chancellor did not err. Under no view of this record could we say that his findings were clearly wrong or against the preponderance of the evidence. Therefore, the decree complained of should be sustained. *Wade* v. *Wade,* 115 W. Va. 132, 174 S. E. 787; *First Nat. Bank* v. *McCloud,* 112 W. Va. 537, 540, 165 S. E. 799; *Davis* v. *Davis Trust Co.,* 107 W. Va. 141, 147 S. E. 490; *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 620.

The final decree of the circuit court is affirmed.

*Affirmed.*